## STRATEGICAL DEMOLITION TORPEDO CO. Inc. v. UNITED STATES.

### No. 49967.

United States Court of Claims.

April 3, 1951.

Jones, C. J., dissented.

Frank E. Scrivener, Washington, D. C. (Charles K. Davies, Jr., Walter G. Fields and Robert C. Handwerk, all of Washington, D. C., on the brief), for the plaintiff.

G. Murray Paddack, Washington, D. C., Newell A. Clapp, Acting Asst. Atty. Gen. (T. Hayward Brown, Washington, D. C., on the brief), for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge, delivered the opinion of the Court.

The Government has moved to dismiss the plaintiff's petition. We recite the pertinent facts, as stated in the petition.

On December 30, 1930, four individuals, Joseph Barraja-Frauenfelder, William C. Magee, John H. Thomas and Philip P. Krug, having invented a Strategical Demolition Torpedo, made due application for United States letters patent on their invention. They renewed their application on January 15, 1934, with a request that if the patent was granted, it should be granted to the Strategical Demolition Torpedo Company, Inc., which is the plaintiff in this suit. The patent was granted to the plaintiff on August 21, 1934. On May 5, 1949, the plaintiff assigned the patent to the four original inventors, but on May 20, 1949, the inventors reassigned the patent to the plaintiff.

The petition herein was filed December 15, 1950. It asserts that the Navy Department has, since April 1949, without the license or consent of the plaintiff or any of its assignors, infringed and is still infringing the patent by using the patented device. The petition asks for just com-

pensation for the Government's alleged use of its patent.

The suit is brought pursuant to the Act of June 25, 1910, 36 Stat. 851, and the amendment thereto of July 1, 1918, 40 Stat. 704, 35 U.S.C.A. § 68. This statute is now Section 1498 of the Judicial Code, 28 U.S.C.A. § 1498, 63 Stat. 102.

We quote the pertinent parts of Section 1498:

"Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

\*   \*   \*   \*   \*   \*

"This section shall not confer a right of action on any patentee who, when he makes such a claim, is in the employment or service of the United States, or any assignee of such patentee, and shall not apply to any device discovered or invented by an employee during the time of such employment or service. [June 25, 1948, c. 646, 62 Stat. 942]. As amended May 24, 1949, c. 139, § 87, 63 Stat. 102."

The Government says that the plaintiff's petition shows on its face that the plaintiff cannot maintain its action, because the petition, in its paragraph 6 says: 6. That the invention covered by and claimed in said letters patent No. 1,971,102 was not invented or discovered, by your plaintiff nor any of its assignors, while employed by the Government of the United States except that portion of the invention or discovery attributable to John H. Thomas who at the time of the said invention or discovery was an employee of the Government of the United States, nor is your plaintiff, or any of its officers, directors, or stockholders, now in the employ or service of the Government of the United States.

The situation is, then, that John H. Thomas, one of the four inventors who applied for the patent, was, at the time of the invention, an employee of the Gov-

ernment of the United States. The statute, as quoted above, says that the right to sue "shall not apply to any device discovered or invented by an employee" of the United States during such service. The Government says that the Strategical Demolition Torpedo was invented by Thomas when he was such an employee. The plaintiff says that it was not invented by Thomas, but by Thomas and three other men, and that the disqualification stated in Section 1498 applies only *pro tanto* to the device, and that the size of the fraction of disqualification can be determined only after a hearing on the merits, showing the extent of Thomas' contribution to the invention.

The Government strongly urges the indivisibility of patents, even after they are granted and are owned by several persons as a species of industrial property. There is, indeed, much in the books, at least by way of dictum, which indicates that the co-ownership of patents is different in essential respects from that of other kinds of property. We do not subscribe to all that has been said, and it is not necessary to the decision of this case that we investigate that question. Our problem is that of applying the statute to the facts of this case.

Until the enactment of the Act of June 25, 1910, the Government could, with impunity, "infringe" upon anyone's patent. Whether this was because of the Government's sovereign immunity from suit in any case, no matter what moral wrong it might have committed, unless it had consented to be sued, or was because the monopoly which Congress granted to a patentee was not intended to be effective against the United States, on which assumption the patentee would have no "right" as well as no remedy against the United States, would be an interesting philosophical problem. In any event he could not sue. Whether the Act of 1910 created a right, or only waived an immunity, the terms on which Congress was willing that the United States should be sued must be complied with. It was not willing that the United States might be sued for the use of "any device discovered

or invented by an employee [of the United States] during the time of such employment or service."

The device here in question was invented by Thomas (and others) while he was an employee of the United States. The statutory disqualification would, then, seem to apply. If we would give the statute a liberal interpretation in favor of the right to sue the United States, contrary to the admonitions of the Supreme Court, see United States v. Michel, 282 U.S. 656, 659, 51 S.Ct. 284, 75 L.Ed. 598; United States v. Sherwood, 312 U.S. 584, 590; cf. Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, we would still find it impossible to say that the device in question was not "invented by an employee" of the United States, when in fact it was invented by such an employee and three other men. And what we suppose to have been the purpose of the statutory provision would be, to a considerable degree, frustrated, if one of those who put their ideas together to produce the invention was having the benefit, during the gestation of the invention, of the skills and tools and ideas available in a Government shop.

If we were to hold as the plaintiff urges that the disqualification provided in the statute was applicable only to the extent that Thomas contributed to the invention, we suppose that it would be wholly impracticable to hear and decide the case on the merits. Whatever may be said about the indivisibility of a patent after it has been granted and has become a property right, we think that the invention, that is, the process of producing the idea to be patented, is indivisible in the strictest sense. It is not susceptible to dissection. The number of hours that each inventor worked on the problem might conceivably be a matter of record, or testimony. The kinds of suggestions that each one contributed, or experiments which each one performed, furthering the objective, or eliminating unusable alternatives, might be shown. But the culmination of the work, the invention itself when it was accomplished, was, according to the joint application for the patent, the accomplishment of each and all. Thus the device was "invented by an employee" of the Government and cannot be the subject of a suit under Section 1498.

The defendant's motion to dismiss is sustained, and plaintiff's petition dismissed. It is so ordered.

HOWELL, WHITAKER, and LITTLETON, JJ., concur.

JONES, Chief Judge, dissenting.

I cannot see any logical basis for deciding, on the pleadings alone, that because, forsooth, one of the four original patentees was at the time an employee of the Government none of them can claim any property rights in dealings with the Government.

The fact that four people own a patent that is indivisible does not keep four people from each owning a one-fourth interest any more than the fact that one of four people, in joint ownership, was an alien and prohibited by State law from owning property, would forfeit the rights or interests of the other three and cause the entire property to escheat to the State.

When property stands in the name of four people each of them is presumed, in the absence of evidence to the contrary, to have a one-fourth interest in the property.

The majority seeks to apply a different rule when one of them works for the Government, citing as one of the reasons that the other three had the advantage "of the skills and tools and ideas available in a Government shop." Facts of common knowledge indicate that there are more skills, tools, and ideas outside rather than in a Government shop. Far more miracles of knowledge and skill have been wrought in the fields of industry and in the far reaches of this country than were ever hammered out in Government establishments. Perhaps the one Government employee gleaned as much from the vast works of outside industry of which the three were a part as the three gained from the wisdom of the Government for which the one worked.

I cannot find in section 1498 of the Judicial Code any basis for the restrictions

which the majority believe to be expressed. If that is the right interpretation then any business concern which maintains a research department might endanger its patent rights if any of its officers, directors, or stockholders worked all or part time for the Government.

I would overrule the motion to dismiss and get the facts. Perhaps with that getting we would get a better understanding than can be gained from the pleadings alone.