Joseph C. MYERS

v.

UNITED STATES.

No. 119–56.

United States Court of Claims.
Nov. 4, 1959.

Scott P. Crampton, Washington, D. C., for the plaintiff. Robert F. Conrad and Watson, Cole, Grindle & Watson, Washington, D. C., were on the briefs.

G. M. Paddack, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant.

PER CURIAM.

This case was referred pursuant to Rule 45(a), 28 U.S.C.A., to Donald E. Lane, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law which the commissioner has done in a report filed January 7, 1959. Exceptions to this report were taken by plaintiff and briefs were filed with the court by both parties. Argument by counsel was made before the court, and upon consideration thereof, together with the record made and the exceptions and briefs filed, the court being in agreement with the findings and conclusions made by the commissioner hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. It is therefore concluded that under 28 U.S.C. § 1498 plaintiff has no right to maintain this suit against defendant with regard to plaintiff's patent 2,445,-235, and plaintiff's petition will be dismissed.

It is so ordered.

### Opinion of Commissioner.

This is a patent suit under the provisions of Title 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for unauthorized use of his patented invention by defendant. The sole issue now before the court is whether or not plaintiff, an employee of defendant at the time he conceived and completed the invention, is entitled to bring suit under Section 1498.

The last paragraph of Section 1498, quoted in finding 3, provides that a Government employee shall have the right to bring suit against the Government except where he was in a position to order, influence, or induce use of his invention, and provides that the patentee shall have no right of action with respect to any invention made while employed, where the invention was related to the official functions of the employee, including research and development, or where, in the making of the invention, Government time, materials or facilities were used.

Prior to the revision of Section 1498, effective July 17, 1952, a patentee was not accorded a right of action against the Government with respect to any invention he made while in the employment or service of the Government.

The patent in suit, No. 2,445,235, issued to plaintiff on July 13, 1948, as the result of an application filed by plaintiff on February 15, 1944. The patent relates generally to aircraft installations and particularly to mechanisms for opening and closing a gun port or aperture in an exterior surface of an aircraft. The patent claims define plaintiff's alleged invention in terms of an aircraft including a gun and/or blast tube mounted inwardly of a surface opening, a movable closure for the opening, and various operating, control, or interlocking mechanisms for the closure.

Plaintiff was an employee of the Preliminary Aircraft Design section of the Navy Bureau of Aeronautics from December 1941, to June 1944, first as associate aeronautical engineer, professional grade P-3, and then as aeronautical design engineer, professional grade P-4. Plaintiff filed his application for patent while so employed.

The official functions of the Preliminary Aircraft Design section during the period of plaintiff's employment therein included analysis and preparation of preliminary or tentative aircraft designs

for various offices of the Bureau of Aeronautics. The section prepared layout drawings, investigated armament developments, made mathematical analyses, and developed tentative aircraft profiles. This section was concerned with problems of designs for adapting existing aircraft for new missions and the problems of designs for the installation of various gear in aircraft. The functions included preliminary research and development. During the first few months of his employment in the section, plaintiff was "assigned certain detailed things to work out in the way of installations, and things of that nature." Plaintiff worked out these problems and made illustrative layout drawings of possible designs.

Plaintiff urges that no part of the work of the Preliminary Aircraft Design section included the investigation of new ideas, the development of new equipment, or the design of new features. Consideration of the evidence of record leads to an opposite conclusion. The objective of the section was to assist in the initial development of solutions to problems confronting other sections of the Bureau of Aeronautics, and to thus assist in the development of improved aircraft. In preparing preliminary aircraft design layout drawings showing possible solutions for problems presented, ingenuity and inventive ability may be necessary in combining old features into new combinations or into old combinations producing a new or unexpected result. It appears immaterial that the Preliminary Aircraft Design section did not prepare the final working and engineering drawings necessary to aircraft manufacturers.

█ Plaintiff apparently considered that his idea relating to a gun port closure was relevant to the work of the Preliminary Aircraft Design section. He urges that he attempted to interest his superiors and his co-workers in his idea. The record is not clear as to exactly what the plaintiff disclosed to his superiors in the section, nor as to the exact time of any such disclosure. Plaintiff's assertion that his superiors were not interested in his gun port closure idea does not warrant a finding that such an idea was not related to the official functions of the plaintiff in the Preliminary Aircraft Design section.

A reasonable interpretation of the evidence of record supports a conclusion that many, if not all, of the specific details of the mechanisms claimed in plaintiff's patent were developed by plaintiff after he began work in the Preliminary Aircraft Design section, and resulted generally from his professional engineering duties in that section. One general objective of plaintiff's official function and also of his patented invention was minimizing air drag of aircraft installations. Assuming that plaintiff's development of his invention was done entirely on his own time with his own materials and facilities, it is concluded that plaintiff's employment included at least preliminary research and development, and that plaintiff's invention was related at least generally to the official functions of his employment at the time.

It is not necessary to decide the actual date of the completion of plaintiff's invention. Stub v. United States, 119 F. Supp. 206, 127 Ct.Cl. 710, 713. Plaintiff admits that he worked on the idea while employed in the Preliminary Aircraft Design section, but outside of the section office, and the record shows that the invention was constructively reduced to practice by the filing of the patent application of February 15, 1944, while plaintiff was still employed in that section.

Plaintiff has described his grade P–4 work in the Preliminary Aircraft Design section as requiring ability to arrange components to secure efficient performance, and stated that ingenuity and inventive ability were of paramount importance. It would seem absurd to find that ingenuity and inventive ability were not expected or important during the few months plaintiff was employed as an associate aeronautical engineer in professional grade P–3. It is significant that plaintiff was employed as an aeronautical engineer and not as a mere draftsman.

■ Returning now to the language of the proviso contained in Title 28 U.S.C. § 1498, as amended, plaintiff was not in a position to order the use of his invention by defendant. However, plaintiff's efforts to interest his superiors in his idea may seem to be an attempt to influence or induce the use of his idea. It is not necessary to make a determination on this specific point in view of other language contained in the proviso. The second sentence of the proviso contains definite language denying a right of action to a patentee under specified conditions. The proviso bars a right of action to an employee-patentee with respect to *any* invention related to the official functions of the employee. This language does not require that the employee be specifically hired to make inventions or to make a specific invention, or even that he be hired as an inventor. The meaning is clear that if an invention is made by the employee, is related to the work of the employee, and the official functions of the employee include research and development, no right of action is conferred by the proviso. Plaintiff's official functions during the entire time he was employed in the Preliminary Aircraft Design section included research or investigation of what had already been done and included development or design of new aircraft and aircraft components.

■ It is concluded, therefore, that the proviso of Title 28 U.S.C. § 1498, stating that the section shall not confer a right of action with respect to any invention made by an employee where the invention was related to official functions of the employee, functions including research and development, applies to plaintiff. In reaching this conclusion, it is unnecessary to determine whether or not the defendant may possess a shop right or free license, or be entitled to any assignment of title in the invention, if any, defined in the claims of the patent in suit.

### Findings of Fact.

1. This is a patent suit brought under the provisions of Title 28 U.S.C. § 1498, as amended. Plaintiff seeks to recover reasonable and entire compensation from defendant for unauthorized use and manufacture by or for the United States of a patented invention. United States Patent No. 2,445,235 was issued to plaintiff on July 13, 1948. Plaintiff's claim is for the use of his invention subsequent to July 17, 1952. Plaintiff is a citizen of the United States and resides in Arlington, Virginia.

2. The sole issue now before the court is whether or not plaintiff is entitled to sue under the above section in view of the nature of his employment by defendant at the time he made the invention and filed his application for patent thereon. The parties agreed at pretrial to separate this specific issue for trial, and agreed to defer the trial of patent infringement, patent validity, and accounting issues until after the court's order on the present issue is entered.

3. The pertinent proviso of Section 1498 reads as follows:

"§ 1498.  Patent cases.

\* \* \* \* \* \*

"A Government employee shall have the right to bring suit against the Government under this section except where he was in a position to order, influence, or induce use of the invention by the Government. This section shall not confer a right of action on any patentee or any assignee of such patentee with respect to any invention discovered or invented by a person while in the employment or service of the United States, where the invention was related to the official functions of the employee, in cases in which such functions included research and development, or in the making of which Government time, materials or facilities were used." [28 U.S.C. —1952 Ed.]

4. The above-quoted proviso became effective on July 17, 1952, when it was substituted for the following proviso of an Act approved June 25, 1948:

"§ 1498. Patent cases.

\* \* \* \* \* \*

"This section shall not confer a right of action on any patentee who, when he makes such a claim, is in the employment or service of the United States, or any assignee of such patentee, and shall not apply to any device discovered or invented by an employee during the time of such employment or service." [28 U.S.C. —1948 Ed.]

5. The subject of plaintiff's patent in suit is "Aircraft With Blast Or Like Tube And Closure Therefor." The patent specification states:

\* \* \* \* \* \*

"In many types of aircraft, openings or apertures are provided in such surfaces for affording communication between the interior of the aircraft structure and the exterior thereof, the openings serving numerous and diverse purposes.

"A general object of the invention is to provide a closure for such an opening which is so mounted that it may be moved selectively to closed position or to open position in which it preferably is disposed inside the aircraft.

"Another object of the invention is to provide a closure of the kind referred to which is so shaped relatively to the associated outer surface of the aircraft that when in closed position the closure will merge smoothly with the aircraft surface so that the latter will be continuous and most conducive to streamline air flow.

\* \* \* \* \* \*

"Another object of the present invention is to provide a closure for an aircraft gun blast tube so mounted that it may be moved selectively to tube-closing position or to a position, preferably inside the blast tube, out of the line of fire.

"Another object of the invention is to provide a construction of the character stated in which the closure may be operated by remote control, preferably from the regular station of a crew member.

"A further object of the invention is to provide interlocking control means for coordinating the opening and closing of the blast tube closure with the conditioning of the associated gun for firing or on 'safety,' i. e., so that it can not be fired."

6. The ten claims contained in the patent in suit, and particularly pointing out and distinctly defining the subject matter which plaintiff regarded as his invention, define aircraft structure including a gun and/or a blast tube mounted inwardly of an opening in the surface of the aircraft, and including a movable closure for the opening. The several claims recite various operating, control, or interlocking mechanisms for the closure. The ten drawings accompanying the patent specification show various elevational, sectional, and diagrammatic views of structures embodying the specific details defined in the patent claims.

7. Plaintiff was an employee of the United States from the fall of 1941 to June 1944. Plaintiff contends that the invention here in suit was not related to the official functions of his employment by defendant. Defendant contends that plaintiff's invention, if any, was completed during and was related to plaintiff's employment at the Preliminary Aircraft Design section of the Bureau of Aeronautics of defendant's Department of the Navy.

8. Plaintiff's employment and activities relevant to the invention in suit may be tabulated chronologically as follows:

a. June 1933, to fall of 1941—After receiving a Bachelor of Civil Engineering degree from Vanderbilt University in June 1933, plaintiff worked as a civil engineer, and was employed first by the Tennessee Valley Authority and later by the Nashville Bridge Company.

b. January–June 1941—Plaintiff studied aeronautical engineering at night school at Vanderbilt University.

c. September 1941—Plaintiff accepted a position as Associate Structural Engineer, grade P–3, with the Navy Bureau of Yards and Docks, at the U. S. Naval Academy, Annapolis, Maryland. Between September and December 1941, plaintiff designed various elements of a new small boat basin at the Academy. Plaintiff's work included the design of piers, quay walls, wharves, etc.

d. December 9, 1941—Plaintiff transferred from the Navy Bureau of Yards and Docks, Annapolis, Maryland, to the Navy Bureau of Aeronautics, Washington, D. C., and began work in the Preliminary Aircraft Design section of the Bureau of Aeronautics. Plaintiff was employed as Associate Aeronautical Engineer, grade.P–3. During the first three months, plaintiff was assigned certain detailed things to work out in the way of installations and things of that nature, and worked over drawing boards as an engineering layout draftsman.

e. January–June 1942—Plaintiff took courses relating to airplanes and aeronautics at night school in the Graduate School, U. S. Department of Agriculture.

f. February or early March 1942—Plaintiff disclosed a sketch illustrating his idea of the invention in suit to his superior, Mr. W. D. Clark, the Preliminary Aircraft Designer of the Section, and to Mr. Clark's assistant, a Mr. McCalley. Plaintiff states that neither Mr. Clark nor Mr. McCalley expressed any interest whatsoever nor indicated any desire to incorporate the idea into aircraft designs worked out within the organization. The sketch mentioned has not been produced. Messrs. Clark and McCalley died before plaintiff filed the present suit. Plaintiff has been unable to produce satisfactory evidence to corroborate or illustrate his disclosure of an idea to his superiors in February or early March 1942. Two co-employees of the Navy Preliminary Aircraft Design section testified in 1956 that plaintiff revealed his gun port enclosure idea to them in early 1942 by drawings or sketches. Such drawings or sketches have not been produced. There is no satisfactory evidence that the structural details recited in plaintiff's patent claims were known to plaintiff in early 1942, or were disclosed to others in early 1942.

g. March 1942, to summer of 1943— Plaintiff states that he made drawings and a wooden model showing his idea during this period, and that the model was made with the help of Mr. Carl Covington. The drawings mentioned have not been produced. The wooden model is plaintiff's exhibit 1 herein. The wooden model does not include any of the various operating, control, or interlocking means illustrated in the patent in suit and recited in the patent claims. The wooden model was made in 1943.

h. September 10, 1942—A classification sheet of the U. S. Civil Service Commission bearing this date contains a description of the duties and responsibilities of the position, Engineer (Aero), grade P–4, to which the plaintiff was advanced in the Navy Preliminary Airplane Design section. The job description states—

"Under general supervision with wide latitude for independent or unreviewed action and decision:

"1. To serve as the principal assistant to the Senior Engineer (Aero) supervisor of Preliminary Design group 'B' in the drawing room and as such to prepare with the aid of assistants, original airplane designs from general specifications, or verbal instructions, and in the absence of his superior to take care of and to direct his group.

"2. To participate in the discussion and planning of the design after approval of the general features, and to cooperate with his group head and his subordinates in making required mathematical calculations and investigating design features throughout the development of the

particular design for which his group has the responsibility.

"3. To assist in the supervision of engineering subordinates and drafting ratings as may be required to comprise a design group."

i. Summer 1943—Plaintiff consulted with a private patent lawyer about obtaining a United States patent on his gun port enclosure ideas.

j. October 30, 1943—Plaintiff made a drawing entitled Design No. 263 Class VBT Airplane, General Arrangement, Plan Number 8800, in Preliminary Airplane Design section, Bureau of Aeronautics, Navy Department. The drawing shows an airplane design having guns embedded in the wings and projecting therefrom. This design does not incorporate the features of plaintiff's alleged invention. This drawing is illustrative of drawings made by plaintiff and others in the Preliminary Airplane Design section in the course of performance of duty.

k. February 9, 1944—Plaintiff made a drawing marked Plan Number 8904, generally similar to that noted just above and also showing the location of guns partially embedded in the wings and projecting therefrom. There is no evidence in the record tending to show that plaintiff's gun port closure idea was ever incorporated in any official drawings of the Preliminary Airplane Design section by plaintiff or by others in the section during plaintiff's employment in said section.

l. February 15, 1944—Plaintiff's application for the patent here in suit was filed at plaintiff's expense in the United States Patent Office.

m. June 1944—Plaintiff resigned from his position as Aeronautical Design Engineer, grade P–4, Navy Department —Bureau of Aeronautics Preliminary Aircraft Design section.

n. July 27, 1948—Plaintiff applied for government employment as Aeronautical Engineer, grade P–6. His application on standard form 57, U. S. Civil Service Commission, contained the following description by plaintiff of his earlier employment during the period December 1941, to June 1944, as Aeronautical Design Engineer, grade P–4, at Navy Department, Bureau of Aeronautics, Preliminary Aircraft Design section:

"Nature of the work consisted of design and development of advanced military aircraft for Naval usage such as: comprehensive investigations of various armament installations, both fixed and flexible, cockpit arrangements, flaps, ailerons, and other control surfaces. The making of complete inboard profile drawings showing all installations, and 3-view drawings descriptive of the arrangements finally adopted for specified design studies. The work frequently required a compilation of weights of the standard parts selected, and an estimation of the weights of the new components developed in the office. I collaborated in carrying out these investigations on practically all types of military planes, such as multi-motored patrol bombers, dive bombers, scout bombers, torpedo planes of both air-cooled and liquid-cooled, single and twin-engine types. Some of the work consisted of investigating the practicability of adapting service planes to new types of missions, or to new types of armament developments. The development of special devices for the solution of problems arising in a particular design was frequently necessary. Preparation of reports on special mathematical analyses, and compilation of curves and charts descriptive of aerodynamic performance were occasionally necessary. The position called for assisting in coordinating and directing the efforts of a group of some ten or twelve men.

"The position required a knowledge of all the elements of airplane construction, of aerodynamics, structures, motors, stability, latest developments in materials, the mechanical aspects of control surfaces,

and the ability to arrange all of an airplane's components to obtain efficiently specified performance characteristics. *Ingenuity and inventive ability were of paramount performance.*" [Emphasis added.] (Plaintiff testified that the word *performance* should have been *importance.*)

o. December 3, 1956—Plaintiff's affidavit executed this date and filed in this court on December 6, 1956, attached to brief for the plaintiff in opposition to the defendant's motion for summary judgment, refers to the Navy Preliminary Aircraft Design office and plaintiff states therein—

"The men in this office in 1942 were employed: first, for their drafting ability; and second, for their engineering knowledge. They were not expected to or allowed to create something new. * * *"

9. The broad idea of *completely* embedding a gun or cannon in the fuselage or in the wing of a fighter airplane is illustrated in a publication entitled "Jane's All-World Aircraft" for 1939. The Heinkel He. 112 Single-Seat Fighter shown on page 138c of this publication, defendant's exhibit 4, includes a cannon fully embedded in the wing. No closure is shown for the opening in the leading edge of the wing forward of the cannon.

10. Plaintiff stated that following the negative interest shown by his superiors in February or early March 1942, finding 8f, he continued to work on the idea outside of the Bureau of Aeronautics office, making complete and detailed working drawings (not produced), and making a wooden model, plaintiff's exhibit 1, with the aid of an office associate. Plaintiff stated that he consulted with his patent lawyer in the summer of 1943, and that during "this patent development period" no work pertaining thereto was performed in the Preliminary Aircraft Design office.

11. Mr. William M. Martin, an employee in the Navy Preliminary Aircraft Design section from 1939 to 1951, succeeded Mr. W. D. Clark as head of the section in 1947, and testified that plaintiff's gun port closure idea was related to plaintiff's work. Martin testified that the design section provided closure doors on openings for landing gear and steps, and that it was an objective of the work of the section to reduce air drag and to improve air flow. Plaintiff's patent specification states that one of the objects of the invention here in suit is to provide a closure conducive to streamline air flow.

Conclusion of Law.

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that Title 28 U.S.C. § 1498, does not confer upon plaintiff a right of action to bring suit against the defendant with respect to any invention covered by plaintiff's patent 2,445,235, and therefore plaintiff's petition is dismissed.