Francis M. **ROGALLO** and Gertrude S. Rogallo, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 139–70–NN.

United States District Court, E. D. Virginia, Newport News Division.

Feb. 10, 1972.

E. D. David, Jones, Blechman, Woltz & Kelly, Newport News, Va., for plaintiffs.

Helen E. Marmoll, U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

MacKENZIE, District Judge.

The plaintiffs, husband and wife, here seek a refund of Federal income taxes in the amount of $20,720.63 plus interest from October 22, 1969 which they claim was illegally collected from them.

The facts which are not disputed are as follows:

From 1936 until his retirement in 1970, Francis M. Rogallo was an aeronautical engineer for the National Advisory Committee on Aeronautics (NACA) and its successor agency the National Aeronautics and Space Administration (NASA). Gertrude S. Rogallo is a school teacher and has had no affiliation with NASA except through her husband.

For many years the plaintiffs have pursued the hobby of kite flying with Mr. Rogallo as the designer and Mrs. Rogallo as the seamstress and material expert. In 1948 the pursuit of this hobby resulted in the development of a non-rigid kite having the structural design of a parachute and the flight characteristics of a wing that could be controlled and maneuvered for precise position by strings. This revolutionary invention is now known as the "Rogallo Flexible Wing Concept" or the "Rogallo Parawing".

The plaintiffs asked the government to get them a patent but apparently NACA at this time did not recognize the significance of this invention and the Rogallos had to obtain a patent at their own expense. It was not until the late 50's that the Parawing's value as a space recovery device and military vehicle was appreciated. By July of 1963 NASA and the Defense Department had spent over one million dollars on the development of the Parawing and its logical extension, the Paraglider. However, because of Mr. Rogallo's employment as a NASA engineer he did not receive any royalties which would normally be due an inventor and patent holder. Exhibit No. 7, at page 11. For the Rogallos it was reward enough to see their invention put to practical use and to have it stimulate world wide interest. For Mr. Rogallo it was perhaps more gratifying, for as a branch chief at the Langley Research Center in the particular area of employment of his flexible wing he was able to see the extent to which his patent was being used and to personally assist in its further development. Exhibit No. 8.

On July 18, 1963, at a public ceremony, attendant with fanfare, NASA recognized the Rogallos for their perseverance and inventiveness and awarded them (pursuant to the NASA Act of 1958, 42 U.S.C. § 2458) $35,000.00 which was divided equally between them. At the time of the award (as dictated by the enabling statute) the Rogallos were required to execute a non-exclusive roy-

alty free license for the benefit of the United States Government. It is the tax consequences of this $35,000.00 award— i. e. whether it is includible in or excludible from gross income—which bring the parties before this court.

---

The parties agree that the plaintiffs were selected for the award without any action on their part. They did not enter any contest or proceeding and they were not required to render substantial future services as a condition to receipt. The parties also agree that the award was certainly for a scientific achievement and that such achievement was not in connection with Mr. Rogallo's employment. Thus it appears that the plaintiffs are eligible for the tax exclusion as set out in 26 U.S.C. § 74(b) of the Internal Revenue Code. But the defendant asserts that the exact wording of the statute negates the plaintiffs' eligibility since the 74(b) exception is limited to ". . . awards made *primarily* in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement . . . ." 26 U.S. C.A. § 74(b) [Emphasis added]. The defendant claims that the award was made *primarily* in exchange for the royalty free license and not *primarily* in recognition of scientific achievement. A question of the grantor's motive is therefore presented. It has been held, however, that the motives of the grantor are not relevant to the taxability of awards under § 74(b) of the Internal Revenue Act. Simmons v. United States, 308 F.2d 160, 163 (4th Cir. 1965). Therefore, it is questionable whether it is necessary for this opinion to reflect on the grantor's motives vis-à-vis the tax question but in an abundance of caution we shall do so anyway.

■ The word "primarily" as used in § 74(b) not only does not act to bar the plaintiffs' claim but in fact if it were not for this word they might not have a case at all. The use of "primarily" indicates that there *could* be a secondary reason for an award—i. e. one not limited just to the recognition of the grantee. Indeed if NASA's primary concern had been to obtain the right to use the "Rogallo Concept" this special purpose could have been accomplished under § 2473(b) (2) of the NASA Act. 42 U.S.C. § 2473(b) (2). The special purpose of the Awards Statute 42 U.S.C. § 2458 is to provide deserving persons with a monetary award. The fact that the statute also provides for a license agreement is incidental to the primary purpose. The affidavits and statements of the officials of NASA and its Inventions and Contributions Board clearly support this view.

■ The defendant mentions that in the Code of Federal Regulations the Nobel and Pulitzer prizes are cited as examples of awards which qualify for the 74(b) exclusion. 26 C.F.R. § 1.74–1 (1971). The defendant's purpose in mentioning this is to indicate that perhaps the award to the Rogallos was not made on so lofty a plane as are these two well known prizes. Even assuming that this is true would not change the fact that the award to the Rogallos qualifies in every way for the 74(b) exclusion. There is no requirement in 74(b) that the awards be identical with the Nobel or Pulitzer prizes or for that matter that the scientific achievement award be connected with any eleemosynary or altruistic purpose.

■ It is the opinion of this court that the *primary* purpose of the award to the Rogallos was to recognize their scientific achievement and that any other purpose was subordinate to this.

The position of the United States that it was "buying" something by means of the award is simply not consonant with the accolades of an awards ceremony and public presentation.

If, indeed, this award was simply a purchase, the United States, as the active initiators of the transaction, had ample time and opportunity to label it as such.

Lastly, it rubs across the grain of this court to "award" something with

one hand—unsolicited—for scientific achievement, and then reclaim 50% of the "award" with the other. With the mechanics of the award always within its grasp, it would have been with much more grace for the United States to have "awarded" a lesser sum under true award circumstances.

It is Ordered:

Counsel for all parties will immediately confer to develop the amount now due and will submit a proper Order within thirty (30) days from the date of this Memorandum Opinion and Order, making reference to this Opinion and Order.