Francis M. **ROGALLO** and Gertrude
S. Rogallo, Appellees,

v.

**UNITED STATES** of America,
Appellant.

No. 72–1496.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1972.

Decided March 6, 1973.

WINTER, Circuit Judge:

In a suit by Mr. and Mrs. Francis M Rogallo for a tax refund, the district court entered judgment for the taxpayers.[1] It held that a $35,000 "contribution award" which the Rogallos received from the National Aeronautics and Space Administration (NASA) pursuant to § 306 of the National Aeronautics and Space Act, 42 U.S.C.A. § 2458 (1970), qualified as a prize or award primarily in recognition of scientific achievement and was therefore not includable in the Rogallos' gross income under IRC § 74(b), 26 U.S.C.A. § 74(b). Appealing, the government contends that § 306 "contribution awards" are primarily compensatory in nature and are therefore includable in gross income.[2] IRC §§ 61(a), 74(a), 26 U.S.C.A. §§ 61(a), 74(a).[3] We are persuaded that the Rogallos' § 306 award did not meet the stringent tests of § 74(b), and accordingly reverse.

## I.

Francis Rogallo, an aeronautical engineer, was employed by the government at the Langley Research Center, formerly a predecessor and now part of NASA. During his spare time, Mr. Rogallo and his wife pursued their hobby of flying and designing kites. In 1948, the pursuit of this hobby led to the development of the Rogallo Parawing, a flexible kite with the structural characteristics of a parachute and the aerodynamic characteristics of a wing. The Rogallos asked the government to obtain a patent for them,[4] but the government

Paul M. Ginsburg, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and John M. Scott, Jr., Attys., Tax Div., Dept. of Justice, and Brian P. Gettings, U. S. Atty., on brief), for appellant.

Herbert V. Kelly, Newport News, Va. (Jones, Blechman, Woltz & Kelly and F. O. Blechman and E. D. David, Newport News, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and RUSSELL, Circuit Judges.

1. 341 F.Supp. 998 (E.D.Va.1972).

2. The Internal Revenue Service has ruled that § 306 awards do not qualify for IRC § 74(b) exclusion. Rev.Rul. 69–129, 1969–1 Cum.Bull. 35.

3. § 61. Gross Income Defined.
   (a) General Definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived . . . ..

§ 74. Prizes and awards.
   (a) General rule.—Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

4. Pursuant to Act of July 19, 1952, ch. 950, § 1, 66 Stat. 811 (repealed 1965), the government could grant a patent to a government employee without the payment

expressed no interest. The Rogallos then patented the parawing at their own expense. By 1963, the government recognized the parawing's military and space potential and had begun to invest large sums in its development. The Rogallos received no royalties or other compensation from the government.[5]

On July 18, 1963, NASA presented the Rogallos with a monetary award having a face amount of $35,000, which, less taxes withheld, was divided equally between them. The award recited that it was made "for the technical contribution entitled 'flexible kite' which represents a significant value in the conduct of the aeronautic and space activities of the United States." The award was made pursuant to § 306(a), which, in pertinent part, provides:

> [T]he Administrator is authorized, upon his own initiative or upon application . . . to make a monetary award, in such amount and upon such terms as he shall determine to be warranted, to any person . . . for any scientific or technical contribution to the Administration which is determined to have significant value in the conduct of aeronautical and space activities . . . .. In determining the terms and conditions of any award the Administrator shall take into account—
>
> (1) the value of the contribution to the United States;
>
> (2) the aggregate amount of any sums which have been expended . . . for the development of such contribution;
>
> (3) the amount of compensation previously received by the applicant for or on account of such contribution by the United States; and
>
> (4) such other factors as the Administrator shall determine to be material.

The Rogallos executed a royalty-free non-exclusive irrevocable license of their patent in favor of the government. They did so as required by § 306(b), which provides:

> No award may be made under subsection (a) of this section with respect to any contribution—
>
> (1) unless the applicant surrenders, by such means as the Administrator shall determine to be effective, all claims which such applicant may have to receive any compensation . . . for the use of such contribution . . . by . . . the United States.

The taxpayers and the government have stipulated these facts: NASA selected the Rogallos for the contribution award without any action or application on the Rogallos' part; NASA did not require the Rogallos to render substantial future services as a condition to receiving the award; NASA did not make the award "for an accomplishment in connection with [Mr. Rogallo's] employment but was developed by the Rogallos

---

of fees if his department head certified that the invention was likely to be used in the public interest and if the employee granted the government a royalty-free license to practice the patent. Cf. 42 U.S. C.A. § 2457 (1970).

5. At oral argument, the government suggested that it had no obligation to pay royalties because it had not yet used the parawing, but was merely developing it. Whether or not the government would have paid royalties when it began to use the parawing, the Rogallos had no right to sue the government for royalties since Mr. Rogallo was a government employee and the parawing was related to his of-

ficial functions. 28 U.S.C.A. § 1498 (Supp. 1, 1952), as amended, 28 U.S.C.A. § 1498 (Supp. 1, 1972). That section provides:

> This section shall not confer a right of action on any patentee . . . with respect to any invention discovered or invented by a person while in the employment or service of the United States, where the invention was related to the official functions of the employee, in cases in which such functions included research and development, or in the making of which Government time, materials or facilities were used.

See infra pp. 5 n. 9, 6–7.

on their own time;"[6] and the parawing is in the scientific field of aeronautics.

## II.

■ IRC § 74(b) excludes from gross income:

amounts received as prizes and awards made primarily in recognition of . . . scientific . . . or civic achievement, but only if—

(1) the recipient was selected without any action on his part to enter the contest or proceeding; and

(2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.

IRC Regulation § 1.74–1(b) restates the tests of the statute and adds another: an award is includable if it is from an employer to an employee in recognition of some achievement in connection with his employment. The Regulation further explains that the award must be made in recognition of "past achievements" and cites the Nobel and Pulitzer Prizes as the type of award that would qualify for exclusion. The legislative history refers to the same examples. See H.R.Rep.No.1337, 83d Cong., 2d Sess. (1954) and S.Rep.No.1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code Cong. & Admin.News, pp. 4163–64, 4813 (1954). These references to the Nobel and Pulitzer Prizes indicate Congress' intent that the exclusion be

available only where the award was gratuitous, rather than compensatory.[7]

The stipulated facts establish that the Rogallos' § 306 award satisfied all the requirements of § 74(b) and Reg. 1.74–1(b) but one, leaving still at issue the requirement that the award be made "primarily in recognition of" rather than in compensation for the Rogallos' scientific contribution. We turn to resolution of this issue.

## III.

The language, legislative history, and operation of § 306 all indicate that NASA presents the awards not primarily for an act of invention *per se*, but primarily for the act of contributing an invention or scientific or technical improvement to NASA. Section 306 is entitled "contribution awards." By its terms, § 306 authorizes the Administrator to make an award "for any scientific or technical *contribution* to the Administration." (emphasis added). The conditions enumerated in § 306(a) for determining the amount of the award also implicitly embody the concept of *quid pro quo*. Thus, the statute instructs the Administrator to consider the *value* of the contribution to the government, the aggregate amount of the contributor's expenses, and the "compensation previously received" by the contributor from the United States. § 306(a)(1)–(3). The statute's emphasis on the value of the contribution to the government and on monies previously received by the

6. Were it not for this stipulated fact, the cases of Griggs v. United States, 314 F. 2d 515, 161 Ct.Cl. 84 (1963) and Denniston v. Commissioner of Internal Revenue, 41 T.C. 667 (1964), would be highly relevant. These cases held that § 74(b) did not permit the exclusion of an award pursuant to the Government Employees Incentive Awards Act, 5 U.S.C.A. § 2123 (1958), as amended 5 U.S.C.A. §§ 4502–4505 (1967). However, both cases turned on a finding that the award was made in connection with the recipient's employment. IRC Reg. 1.74–1(b).

7. *Cf.* Bingler v. Johnson, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), holding that the recipient of a fellowship com-

pensatory in nature could not exclude it from gross income pursuant to IRC § 117, 26 U.S.C.A. § 117 (pertaining to the exclusion of scholarships and fellowship grants). Compare Rev.Rul. 57–19, 1957–1 Cum.Bull. 33 (college teacher ruled not taxable on award paid by charitable foundation for outstanding teaching, the ruling stating that the recipient had not "done any special work specifically designed to win the award") with Rev.Rul. 57–460, 1957–2 Cum.Bull. 69 (college teacher ruled taxable on receipt of supplement to salary for one year in recognition of outstanding performance even though funds for award were given to employing institution by an individual).

contributor tends to rebut the notion that the award was intended primarily to provide gratuitous honorific recognition of achievement.[8]

Moreover, § 306(b) imposes a condition precedent to presentation of the award: the inventor or developer must contribute his invention or scientific or technical improvement to the government and must surrender all claims to compensation for its use by the government.[9] This provision stands in sharp contrast to the sheerly gratuitous nature of the Nobel and Pulitzer Prizes which exemplify excludable awards.

The legislative history of § 306 supports the conclusion that the NASA award is not made primarily to salute scientific achievement. One Congressman, speaking in support of § 306, characterized it as providing "cash incentive awards . . . given to the inventors or firms which make significant technical contributions to the National Space Program." 104 Cong.Rec. 13988 (1958) (remarks of Congressman Keating). The Conference Report states that § 306 "provides for making awards *for* scientific and technical *contributions*."

Conf.Rep.No.2166, 85th Cong., 2d Sess. (1958), reprinted in 2 U.S.Code Cong. & Admin.News, pp. 3199–3200 (1968) (emphasis added).

The minutes of the NASA Inventions and Contributions Board, the body which determines the recipients and the amounts of § 306 awards, reveal that notions of *quid pro quo* and bargain were prominent in its consideration of the Rogallo award.[10] Moreover, the checks which NASA presented at the awards ceremony were not for the $35,000 face amount of the award, but for $28,700, the difference representing federal income tax which NASA evidently considered appropriate to withhold. On the other hand, NASA's public pronouncements do stress the honorific nature of the award.[11]

The taxpayers vigorously urge, and the district court held, that Simmons v. United States, 308 F.2d 160 (4 Cir. 1962), forbids consideration of NASA's motives and thereby renders much of the preceding discussion irrelevant and improper. In *Simmons*, we were concerned with a prize allegedly for civic achievement. We held that the taxpayer

---

8. In contrast, although not necessarily dispositive, the Nobel and Pulitzer Prizes are flat sums irrespective of the achievement's value, the recipient's expenses, or prior compensation.

9. Admittedly, in this case, since the Rogallos had no right of action against the government for the use of their patent, 28 U.S.C.A. § 1498 (see n. 5 supra), they *did not* give up a judicially enforceable right by executing the royalty-free license. But, in cases not covered by § 1498, e. g., where the inventor is not a government employee, or where the invention is not related to his official functions, the surrender required by § 306(b) may represent a *significant economic consideration*.

10. NASA Inventions and Contributions Board Minutes:
   The problem confronting the Board was to balance an early award in the interests of acquiring rights for the Government as against waiting for results of full-scale tests to see if one had underestimated the value.
   \* \* \* \* \*

[I]t would be necessary to determine from Mr. Rogallo whether he would accept this amount. Mr. Rogallo is aware of the stipulation contained in § 306 of the NASA Act requiring the recipient of an award to surrender all claims which he may have to receive any compensation . . . .
   \* \* \* \* \*
[I]f the Board delayed too long, Mr. Rogallo would get into so strong a position that he would not be interested in giving the Government any rights.
   \* \* \* \* \*
[B]oth tangible and intangible benefits were involved in the Rogallo invention, and that Mr. Rogallo is in an extremely strong position in case he does not wish to accept the proposed award.

11. For example, Dr. Dryden, the NASA official who presented the award, stated:
   I am able to affirm that the award was voluntarily presented . . . in recognition of [the Rogallos] past accomplishments and not as consideration for the royalty-free license under the Rogallo patents.

could not exclude a prize presented to him by a brewing company for catching a specially marked fish, under § 74(b), because catching the fish did not qualify as a civic achievement. We went on to hypothesize:

But even if a civic purpose could be discerned in the company's campaign, . . . it is not the motivations of the donor that are legally relevant. The statute and its legislative history speak only of the character of the recipient's achievement, and the crucial test is the nature of the activity being rewarded. For example, if Simmons' achievement cannot be considered one of those enumerated in section 74(b), the exclusion provided in that section would not apply even if the prize were given by the state of Maryland to further a promotional campaign of its facilities. Conversely, if the recipient's achievement were "civic" in the sense of the statute, he would be entitled to its benefits even though the donor had a commercial purpose in making the award.

308 F.2d at 163.

But *Simmons* is distinguishable from the instant case and the quoted language is not directly applicable. *Simmons* arose in a context where the prize was obviously gratuitous. It was not given where, as here, a statute made *quid pro quo* an essential part of the award. Since the brewery neither required nor received anything of value directly from the prize-winner, its motivations for presenting the prize would have been immaterial, even if the prize had been awarded for a bona fide civic achievement. Thus, when we said, "if the recipient's achievement were 'civic' in the sense of the statute, he would be entitled to its benefits even though the donor had a commercial purpose in making the award," we meant that if the brewery was gratuitously honoring a generally beneficial civic achievement, an ulterior

commercial motive such as incidental popularization of its product would be irrelevant. But we did not bar such inquiry where the fact of *quid pro quo* suggested that the award was not made primarily in recognition of, but primarily in compensation for, the achievement. To hold otherwise would encourage attempts to exclude from gross income, under the aegis of § 74(b), commercial payments disguised as awards made to compensate the putative award-winner for his contribution, or effective sale, of his scientific achievement to the grantor.

For example, if one of the major auto manufacturers presented an award to an inventor who devised a method for limiting auto emissions, but required the inventor to execute a license favorable to the manufacturer as a condition to receiving the award, and if we concluded that the invention qualified as a bona fide scientific achievement, we do not think that *Simmons* would compel the conclusion that the award was excludable, regardless of the manufacturer's evident intention to compensate the inventor. To the contrary, we think it reasonably clear that the award would not be excludable from the inventor's gross income because it was primarily compensatory. The fact that the government presented an award under similar circumstances does not distort these operative principles of § 74(b).

Finally, it is urged that since the Rogallos had no right of action against the government for use of their patent, and the government could therefore have infringed the patent without compensating the Rogallos at all,[12] the § 306 award must be deemed primarily honorific and gratuitous rather than compensatory. We reject this contention.

■■ Whether § 1498 represents an assertion of sovereign immunity (so that the Rogallos have a right but no judicial remedy), or an assertion that cer-

12. 28 U.S.C.A. § 1498. See n. 5 supra. Myers v. United States, 177 F.Supp. 952, 147 Ct.Cl. 485 (1959) ; Stub v.

United States, 119 F.Supp. 206, 127 Ct.Cl. 710 (1954).

tain patent monopolies were not intended to be effective against the United States (so that the Rogallos have neither right nor remedy) presents an interesting question which we need not decide.[13] See Strategical Demolition Torpedo Co. v. United States, 96 F.Supp. 315, 316–317, 119 Ct.Cl. 291 (Ct.Cl.) cert. denied 342 U.S. 825, 72 S.Ct. 46, 96 L.Ed. 624 (1951); Zimmerman v. United States Government, 422 F.2d 326 (3 Cir.) cert. denied 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). In any event, an inventor can attempt to negotiate compensation with the government,[14] and the government may feel some moral compunction to compensate an inventor for its economic emasculation of his patent. Furthermore, § 1498 precludes only judicial relief; it does not preclude legislative relief in the form of a special bill.[15] Finally, the fact that the Rogallos had no judicial remedy to compel compensation does not necessarily render gratuitous or honorific any amount which the government chooses to award them. An employee may have no right or remedy to compel his employer to award him a year-end bonus; but if the employer chooses to do so the award is clearly includable compensation nonetheless.

■ The award received by the Rogallos was an honor, and the Rogallos could well have perceived it solely as such, so that we are sympathetic to their claim. But we conclude that, in fact and in law, the award was not made "primarily in recognition" of their invention of the parawing. NASA made the award not primarily for their act of invention, but for their act of contributing the invention to NASA. Without this contribution and the royalty-free irrevocable license, there would have been no award. The award was not therefore gratuitous and should not be excluded from gross income under § 74(b).[16]

Reversed.

13. For the legislative history, see H.R. Rep.No.1726, 82nd Cong., 2d Sess. (1952), reprinted in 2 U.S.Code Cong. & Admin. News, pp. 2322–24 (1952).

14. See the Minutes of the NASA Board, n. 10 supra, which graphically demonstrate NASA's cognizance of and responsiveness to the position from which the Rogallos could have bargained.

15. A special bill for tax relief was filed on behalf of the Rogallos in Congress. H.R. 9566, 90th Cong., 2d Sess. (1969).

16. During oral argument, we asked the government to submit a post-argument

memorandum indicating its views as to the applicability of the income-averaging provisions of IRC § 1302, 26 U.S.C.A. § 1302. The government responded, stating that certain conditions to the application of § 1302 were met but that the record did not permit any conclusion with regard to the remaining condition. The government also called attention to procedural difficulties in invoking § 1302 and the reasons why it concluded that taxpayers could not claim capital gain treatment under IRC § 1235, 26 U.S.C.A. § 1235. We express no view on these various points in this opinion.