LeROY D. and NOLA S. DICKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickson v. Commissioner
Docket No. 4640-84
United States Tax Court
T.C. Memo 1989-644; 1989 Tax Ct. Memo LEXIS 645; 58 T.C.M. (CCH) 846; T.C.M. (RIA) 89644; December 7, 1989
LeRoy D. and Nola S. Dickson, pro se. Edwina L. Charlemagne, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency of $ 11,607.30 in petitioners' Federal income tax for 1982. Petitioners, husband and wife, resided in Raleigh, North Carolina, at the time they filed the petition herein. This case was submitted under our Rule 122. The sole issue is *646 whether a $ 25,000 cash award received by LeRoy D. Dickson (petitioner) in 1982 is excludable from gross income under section 74(b). [1]
Petitioner, an electrical engineer, has been doing research and development in holography since 1964. Holography is the optical science of creating three-dimensional images using laser beams. He has been employed by International Business Machines Corporation (IBM) since 1968. Petitioner has been doing research and development in holographic scanning since 1973. Holographic scanning is a technology for creating multi-dimensional, scanning laser beams using the three-dimensional imaging concepts of holography. In the regular course of his employment with IBM, petitioner introduced major innovations in the basic science of holographic scanning over a period of eight years, from 1973 to 1980, inclusive. These innovations allow the use of holographic scanning for a variety of applications such as optical reading, non-impact printing, range finding, and bar code scanning. One of petitioners' innovations "represents a new *647 technology which is used for forming the scanning pattern of a supermarket laser scanner used to scan UPC and EAN symbols." This technology performs the scanning function in IBM's 3687 supermarket scanner. The 3687 scanner was first announced by IBM in November 1980 and first customer shipment was made in July 1981. Petitioner received a $ 10,000 "Outstanding Innovation Award" (OIA) in 1981 from IBM for his work in the "development of Holographic technology to enable its incorporation into the 3687 Supermarket Scanner." The U.S. District Court for the Eastern District of North Carolina (Raleigh Division), in Dickson v. United States, Civil No. 83-912-CIV-5 (E.D.N.C., Feb. 11, 1985), affd. per curiam No. 85-1332 (4th Cir. 1986), held "that the award was given to 'compensate for some recent benefit to the employer' and was, thus, properly includable in taxpayer's gross income." In 1982 petitioner received a $ 25,000 "Corporate Award" from IBM for the same achievement. IBM included that $ 25,000 award as compensation on the Form W-2 which it issued to petitioner for 1982. However, petitioners deducted the $ 25,000 as an adjustment to income stating that "Since the award was given *648 in recognition of scientific achievement, it qualifies as tax deductible according to the Internal Revenue Code Section 74(b). It should not be included as gross income." The Commissioner's notice of deficiency stated that "It is determined that the $ 25,000.00 award received from IBM [in 1982] is includable in income. Therefore, your taxable income is increased in the amount of $ 25,000.00." Section 74, enacted in 1954, was the first statutory provision specifically concerned with the treatment of prizes and awards. "Before 1954, the only basis for exclusion was the statutory predecessor of section 102, relating to gifts." [2] In 1982 section 74 provided as follows: [3]
SEC. 74. PRIZES AND AWARDS. (a) General Rule. -- Except as provided in subsection (b) and in section 117 *649 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards. (b) Exception. -- Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if -- (1) the recipient was selected without any action on his part to enter the contest or proceeding; and (2) the recipient is not required to render substantial future services as a condition to receiving the prize or award. The parties have stipulated that the requirements of paragraphs (1) and (2) of section 74(b) have been met, and the Government does not contend that petitioner's work in holographic scanning technology was not a scientific achievement. However, the Government argues that while "it would appear that the award received by petitioner in 1982 satisfies the requirements * * * [of section 74(b)] and is excludible from income * * * as an award for scientific achievement * * * the Treasury Regulations under I.R.C. section 74 and the case law interpreting the statute make it clear that the I.R.C. section 74(b) *650 exception does not apply to awards made by an employer to an employee in compensation for service to the employer or in recognition of employment-related achievements." And it is petitioner's position that it is the task of this Court "to establish whether petitioner's IBM Corporate Award is honorific, and therefore nontaxable, or compensatory, and therefore taxable." The parties are in agreement that if the award is found to be compensatory, it is taxable. The regulations implementing section 74(b) provide in pertinent part as follows: Sec. 1.74-1 Prizes and awards. -- (a) Inclusion in gross income. (1) * * * Prizes and awards which are includible in gross income include (but are not limited to) * * * prizes and awards from an employer to an employee in recognition of some achievement in connection with his employment. * * * (b) Exclusion from gross income. * * * Section 74(b) does not exclude prizes or awards from an employer to an employee in recognition of some achievement in connection with his employment. The Government relies upon the cases upholding the validity of the *651 regulations and applying them in the context of an employer-employee relationship where the award was regarded as compensatory. Rogallo v. United States, 475 F.2d 1 (4th Cir. 1973); Griggs v. United States, 161 Ct. Cl. 84, 314 F.2d 515 (1963); Denniston v. Commissioner, 41 T.C. 667, 673 (1964), affd. 343 F. 2d 312 (D.C. Cir. 1965). And it argues that the $ 25,000 award here in controversy was predominantly compensatory notwithstanding the concomitant presence of a subsidiary objective to bestow honor upon petitioner for scientific achievement. We agree with the Government, and find distinguishable Jones v. Commissioner, 743 F.2d 1429 (9th Cir. 1984), revg. 79 T.C. 1008 (1982), relied upon by petitioner. In Jones the Ninth Circuit found that an award given by National Aeronautics and Space Administration (NASA) to one of its employees was intended to recognize generally his lifetime achievements rather than merely a particular single achievement. It held that notwithstanding the contribution of such lifetime achievements to the conduct of NASA programs, the award was honorary *652 and exempt from tax under section 74. In substance, the Court indicated that in its view the regulation literally and broadly applied went beyond the statute, but it construed the regulation as inapplicable where the award was intended to be honorary in the circumstances of the case before it. In our judgment, the decision of the Court of Appeals in Jones is not controlling on the facts of the present case. In this connection, what was said in Crowell v. Commissioner, T.C. Memo. 1989-268 (slip op.) at pp. 8-9, 57 T.C.M. 596, 598, 58 P-H Memo T.C. par. 89, 268 at 89-1326, is also applicable here: We need not here decide whether to follow the reversal by the Court of Appeals in Jones, because we believe that the facts in that case are very different than those here, and the award to petitioner is compensation under the criteria used by the Court of Appeals for the Ninth Circuit as well as the criteria of the statute, the regulations, this Court in Jones, and the other decided cases. This Court even more recently found Jones distinguishable for the same reason. Auborn v. Commissioner, 93 T.C. (Nov. 20, 1989); Burg v. Commissioner, T.C. Memo. 1989-624. *653 In 1981, petitioner had received a $ 10,000 Outstanding Innovation Award ("OIA") from IBM. In 1982, he received the $ 25,000 Corporate Award in controversy, also from IBM. The IBM "Corporate Award Nomination Summary" form indicates that petitioner's Outstanding Innovation Award and his 1982 Corporate Award were both given to him for his work in "[t]he development of Holographic technology to enable its incorporation into the 3687 Supermarket Scanner." As pointed out above, the 3687 supermarket laser scanner was first announced by IBM in November 1980 and the first customer shipment was made in July 1981. According to the IBM manager's manual, recipients of Outstanding Innovation Awards may be nominated for Corporate Awards. Amounts given with the OIA may be as low as $ 2,500 but may not exceed $ 10,000. However, if it is later determined that an achievement has become more valuable than earlier estimated, the recipient of an OIA can receive more money for the same invention by receiving a Corporate Award. The additional payment is not considered a new or different award. The Corporate Award, whether granted separately or as a supplement to a previous OIA, must result in *654 a total award (the OIA amounts are included) of at least $ 20,000; however, the recipient of a Corporate Award may receive much more than that. The parties have stipulated that the amount of the Corporate Award is determined by referring to prestige or economic value to IBM. We find not only that the amount of the Corporate Award is determined by the prestige or economic value to IBM but whether the award will be given at all is determined by these factors. The Corporate Award is described in the compensation and awards section of the IBM manager's manual only under the Outstanding Innovation Award Plan. Thus, it appears that the requirements which must be met to receive the Corporate Award are the same requirements which must be met to receive the Outstanding Innovation Award. That is, only persons who were regular or part-time employees at the time of the achievement are eligible for the awards, and the achievement must meet the following two requirements: (1) the achievement must have "a significant level of innovation," and (2) the achievement must have or is "expected to have outstanding economic and/or prestige value to IBM as measured by criteria such as commercial *655 or industrial importance, and/or impact on scientific or engineering development and/or impact on some major IBM function." (Emphasis in original.) Petitioner's achievement was evaluated on "CORPORATION AWARD NOMINATION SUMMARY" sheet as follows: BASIS FOR RECOMMENDATION: (Check appropriately on each line)
Economic Value
HIGH
X
LOW
Comm. or Industrial
HIGH
X
LOW
Significance
Impact on
Scientific
HIGH
X
LOW
Development
Enhanced IBM Image
HIGH
LOW
Outside
Inside
HIGH
X
LOW
Creativity
EXCEPTIONAL
X
LOW
Obstacles
EXCEPTIONAL
X
LOW
Overcome
Job
NOT AT ALL
X
TOTALLY
Responsibility
Activity
NOT AT ALL
X
TOTALLY
Management
Initiated
As the summary shows, petitioner's achievement in developing the 3687 holographic supermarket scanner has both high economic value and high prestige value to IBM. Another section of the nomination form contains a statement that the 3687 holographic scanner is expected to result *656 in a net cost savings of 59 million dollars and have a projected revenue exceeding 220 million dollars. We have no doubt on the facts before us that the award to petitioner was made in accordance with the foregoing guidelines and was therefore compensatory. The facts of this case show that, unlike the award in Jones, the Corporate Award given to petitioner herein was compensatory rather than primarily honorary. The 1982 award was given to compensate petitioner for a specific recent contribution of great value to IBM. This contribution was made in connection with his employment, and petitioner would not have received the award if he had not been an employee at the time of the development of the 3687 holographic supermarket scanner or if the achievement had not been of significant economic or prestige value to IBM. Also, as the result of his work in holography, petitioner has published a number of invention disclosures and has filed applications for at least four patents. [4] However, petitioner was required, as a condition of employment, to assign all patents issued in his name during his employment to IBM. *657 Petitioner argues that the Corporate Award was not compensatory because IBM had no legal or moral obligation to grant the award. In Rogallo v. United States, 475 F.2d 1, 7 (4th Cir. 1973), the court rejected a similar contention: the fact that the Rogallos had no judicial remedy to compel compensation does not necessarily render gratuitous or honorific any amount which * * * [their employer] chooses to award them. An employee may have no right or remedy to compel his employer to award him a year-end bonus; but if the employer chooses to do so the award is clearly includable compensation nonetheless. We have examined various arguments of petitioner calculated to establish the honorary nature of the award -- arguments, for example, which focus upon the nature of the occasion at which the award was made, featuring prominent and internationally known guest speakers at the award ceremony, the distinguished character of other persons (e.g., Nobel Prize winners) who were given a like award, etc. We find these arguments persuasive to show that there was indeed an honorific *658 aspect to petitioner's award. But we cannot escape the conclusion on the facts before us that petitioner's award was to compensate him for a specific achievement related to his employment. The award was not made to honor petitioner "primarily in recognition of" his scientific achievement. To the contrary, we find on this record that the award was made primarily to compensate him -- inadequately perhaps -- for services that brought great prestige and millions of dollars of profit to his employer as a consequence of his services. Indeed, although not conclusive, it is nevertheless significant that IBM itself recognized the compensatory character of the award by including it in the W-2 Form which it issued to him and the $ 25,000 was thus part of the "wages * * * and other compensation" from which Federal income tax was withheld. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the year in issue.↩
2. 1 Bittker and Lokken, Federal Taxation of Income, Estates and Gifts, par. 11.1., p. 11-1 (2d ed. 1981). ↩
3. Thereafter, the Tax Reform Act of 1986, Pub. L. 99-514, sec. 122(a)(1), 100 Stat. 2109, amended sec. 74↩ of the Code for prizes and awards granted after December 31, 1986.
4. In Dickson v. United States↩, Civil No. 83-912-CIV-5 (E.D.N.C., Feb. 11, 1985), affd. per curiam No. 85-1332 (4th Cir. 1986), the parties stipulated that the bulk of unique concepts developed by Mr. Dickson were not patentable.