ROBERT AND BARBARA JONES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14442–80.    Filed December 14, 1982.

*Frank D. Berry, Jr.,* for the petitioners.
*Beatrice M. Pearson,* for the respondent.

TANNENWALD, *Chief Judge:* * Respondent determined a deficiency of $7,345.36 in petitioners' 1976 Federal income tax.

---

*This case was heard by Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order, it was reassigned to Judge Theodore Tannenwald, Jr., for disposition.

The sole issue for our determination is whether $15,000 received by Robert Jones from the National Aeronautics and Space Administration (NASA) is excludable from gross income under section 74(b).[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners Robert and Barbara Jones resided in Los Altos Hills, Calif., at the time their petition in this case was filed.

Robert Jones (petitioner) is a noted aerodynamicist. From 1934 until 1958, petitioner was employed by the National Advisory Committee on Aeronautics (NACA), first at the Langley Research Center in Virginia and then at the Ames Research Center (Ames) in Sunnyvale, Calif.[2] In 1958, NACA ceased to exist and "all functions, powers, duties, and obligations, and all real and personal property, personnel, * * * funds, and records of that organization, [were] transferred to the [National Aeronautics and Space] Administration." National Aeronautics and Space Act of 1958, Pub. L. 85–568, sec. 301, 72 Stat. 426, 432. Petitioner was employed by NASA from its inception until 1963. In 1970, petitioner rejoined NASA and was still working at Ames when this case came to trial.[3]

Petitioner's achievements in aeronautics include swept-wing and oblique-wing designs. Petitioner pioneered the concept of swept wing while he was employed by NACA at the Langley Research Center. The swept-wing design, which was a fundamental advance towards achieving supersonic flight, involves wings which are at an acute angle to the fuselage of the aircraft. In the 1970's, petitioner began serious work on the "Oblique-Wing Supersonic Aircraft," a design in which the wing, mounted on top of the fuselage, pivots at the center. When the plane takes off, the wing is perpendicular to the fuselage; when it is in the air, the wing can be swiveled so it is

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Prior to 1934, petitioner worked in an aerial circus and for the Nicholas Beazeley Aircraft Co.

[3] From 1963 until 1970, petitioner worked for the Avco Everett Research Laboratories, a private firm working on the fluid flow problems of cardiac assist devices.

almost parallel with the fuselage. Some time prior to August 12, 1974, petitioner assigned his patent rights in the oblique-wing aircraft to the United States of America as represented by the Administrator of NASA.

Petitioner is the author of 64 scientific papers. In 1975, the Technical Information Division at Ames decided to compile petitioner's papers and print them as a volume entitled "Collected Works of Robert T. Jones." The majority of papers in this volume deal with aeronautics. However, papers on optics, relativistic kinematics, biomechanics, and violins also are included.

Section 306 of the National Aeronautics and Space Act of 1958 authorizes monetary awards "for any scientific or technical contribution to [NASA] which is determined * * * to have significant value in the conduct of aeronautical and space activities." 42 U.S.C.A. sec. 2458 (1973).[4] In 1974, an awards application was submitted to the NASA Inventions and Contributions Board (the Board) recommending petitioner for an award for the oblique-wing aircraft. Ronald Engel (Engel), Chief of the Awards Branch of the Board, expressed the opinion

---

[4]Sec. 306 provides in relevant part:

(a) Subject to the provisions of this section, the Administrator is authorized * * * to make a monetary award, in such amount and upon such terms as he shall determine to be warranted, to any person * * * for any scientific or technical contribution to the Administration which is determined by the Administrator to have significant value in the conduct of aeronautical and space activities. Each application made for any such award shall be referred to the Inventions and Contributions Board established under section 2457 of this title. Such Board shall accord to each such applicant an opportunity for hearing upon such application, and shall transmit to the Administrator its recommendation as to the terms of the award, if any, to be made to such applicant for such contribution. In determining the terms and conditions of any award the Administrator shall take into account—

(1) the value of the contribution to the United States;

(2) the aggregate amount of any sums which have been expended by the applicant for the development of such contribution;

(3) the amount of any compensation (other than salary received for services rendered as an officer or employee of the Government) previously received by the applicant for or on account of the use of such contribution by the United States; and

(4) such other factors as the Administrator shall determine to be material.

(b) * * * No award may be made under subsection (a) of this section with respect to any contribution—

(1) unless the applicant surrenders, by such means as the Administrator shall determine to be effective, all claims which such applicant may have to receive any compensation (other than the award made under this section) for the use of such contribution or any element thereof at any time by or on behalf of the United States, or by or on behalf of any foreign government pursuant to any treaty or agreement with the United States, within the United States or at any other place;

to Darrell Brekke (Brekke), NASA's patent counsel, that the oblique-wing design merited an award in the range of $1,500 to $2,000. Brekke thought that such an amount was too low. He urged Engel to reconsider and sent him portions of the proofs of "Collected Works of Robert T. Jones." Portions of the proofs were submitted to the full Board. On November 20, 1975, the Board met, considered the application for petitioner's award, and voted that a—

monetary award in the amount of $15,000 be granted to Mr. Robert T. Jones, for the totality of his scientific contribution to the conduct of NASA programs in aeronautics and space, and to the advancement of scientific knowledge.

Petitioner received the $15,000 award from NASA on February 19, 1976.

In addition to the NASA award, petitioner has received the following awards and honors: Sylvanus Albert Reed Award of the Institute of Aeronautical Sciences (1946); Honorary Doctor of Science degree, University of Colorado (1971); Ludwig Prandtl-Ring Award of the Deutsche Gesellschaft für Luft-und Raumfahrt e.V. (German Aerospace Society) (1978); President's Award for Distinguished Federal Civilian Service (1981); Langley Medal of the Smithsonian Institution (1981).

### OPINION

The sole issue we must decide is whether section 74(b) operates to exclude the $15,000 received by petitioner from his gross income. Section 74 provides:

SEC. 74(a). GENERAL RULE.—Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

(b) EXCEPTION.—Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—

(1) the recipient was selected without any action on his part to enter the contest or proceeding; and

(2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.

The regulations under section 74 make it clear that gross income includes awards by an employer to an employee in

recognition of some achievement in connection with his employment.[5]

The parties have stipulated that the requirements of section 74(b)(1) and (2) have been satisfied. Furthermore, respondent agrees that petitioner's aeronautical inventions, innovations, and discoveries, conceived and developed while he was employed by NACA and NASA, qualify as "scientific achievement" as that phrase is used in section 74(b).

Respondent, however, argues that petitioner's award is includable in gross income because: (1) NASA has the statutory authority to make only compensatory awards which because of the quid pro quo involved are not awards "primarily in recognition of" scientific achievement;[6] or (2) the award was from petitioner's employer in recognition of some achievement in connection with his employment. Petitioner contends that NASA may grant awards "primarily in recognition of" scientific achievement. He bases his argument that his award is excludable from gross income on the following points: (1) The award was honorific rather than compensatory; (2) in respect of petitioner's achievements while employed by NACA, the award was not given by his employer.

We agree with respondent that the award from NASA was given to petitioner in recognition of employment-related achievements and is, therefore, includable in gross income. Accordingly, we need not, and do not, resolve the parties' disagreement in respect of the correct interpretation to be given to section 306 of the National Aeronautics and Space Act.[7]

NASA awarded petitioner $15,000 "for the totality of his

---

[5]Sec. 1.74–1, Income Tax Regs., provides in part as follows:

Sec. 1.74–1. Prizes and awards.

(a) *Inclusion in gross income.* * * * Prizes and awards which are includible in gross income include * * * any prizes and awards from an employer to an employee in recognition of some achievement in connection with his employment.

* * * * * * *

(b) *Exclusion from gross income.* * * * Section 74(b) does not exclude prizes or awards from an employer to an employee in recognition of some achievement in connection with his employment.

[6]Respondent relies on *Rogallo v. United States,* 475 F.2d 1, 4–5 (4th Cir. 1973). See also Rev. Rul. 69–129, 1969–1 C.B. 35.

[7]We note, however, that *Rogallo v. United States, supra,* suggests that any award by NASA under the authority of sec. 306 may, as a matter of law, be compensatory. See 475 F.2d at 5.

scientific contribution *to the conduct of NASA programs in aeronautics and space,* and to the advancement of scientific knowledge." (Emphasis added.) Initially, we note that petitioner does not contend that his innovations in aeronautics were developed on his own time or while he was employed by anyone other than NACA or NASA. Compare *Rogallo v. United States,* 475 F.2d 1, 3–4 (4th Cir. 1973). Indeed, petitioner testified that while employed by NACA and NASA he worked on such projects as the swept wing, the oblique wing, and space colonies. Furthermore, the "Collected Works of Robert T. Jones" contains over 40 papers on aeronautical subjects dated during petitioner's employment by NACA or NASA.

Petitioner argues that the award was intended to honor him for his lifetime of scientific achievements rather than to compensate him for any one of those achievements. He argues that the provisions of section 1.74–1, Income Tax Regs. (see note 5 *supra*), should not be interpreted as excluding from section 74(b) every award by an employer to an employee. We do not disagree with petitioner, but we do not think that it necessarily follows that he should prevail. The question still remains as to whether petitioner received the NASA award "in recognition of some achievement in connection with his employment."[8] Admittedly, the award had overtones of recognition of petitioner's lifelong achievements independent of his employment by NASA. However, petitioner's activities in respect of the oblique-wing design, incorporated in the patent which he assigned to NASA, were the cutting edge of the recommendation which led to the award, and it is clear to us that, but for these activities and his employment by NASA, the award would not have been made. See *Rogallo v. United States, supra* at 7. At the very least, petitioners, who have the burden of proof (see Rule 142(a)), have not convinced us that such was not the case.[9]

Petitioner next contends that, because a significant portion

---

[8]We have previously sustained respondent's regulations and set forth the supporting legislative history. See *Denniston v. Commissioner,* 41 T.C. 667 (1964), affd. per curiam 343 F.2d 312 (D.C. Cir. 1965).

[9]We do not consider that the fact that Engel valued the oblique-wing design at only $1,500 to $2,000 comes close to satisfying petitioners' burden. On the other hand, we have accorded

of his aeronautical achievements were conceived and tested while he was employed by NACA, the award by *NASA* is not an award by an *employer* in respect of petitioner's NACA-connected achievements.[10] We disagree. NASA is the statutory successor to NACA; all functions, powers, duties, obligations, funds, and personnel were transferred from NACA to NASA. NASA and NACA were separate in name only; both agencies were part of the U.S. Government, which, in fact and in law, was petitioner's employer. Cf. *Estate of Pfohl v. Commissioner*, 69 T.C. 405, 407–408 (1977). Under these circumstances, we believe that, insofar as the NASA award was in recognition of petitioner's NACA-connected achievements, the award was given by petitioner's employer. The cases relied upon by petitioner involving payments by separate successor employers are clearly distinguishable.

For the first time on brief, petitioner argues that the award, if not excludable from gross income under section 74(b), is properly characterized as a gift pursuant to section 102(a).[11] Generally, we will consider only those issues which are properly raised in the pleadings. *Aero Rental v. Commissioner*, 64 T.C. 331, 338 (1975). In any event, we are of the opinion that petitioners have not satisfied their burden of proof (see Rule 142(a)) in respect of this issue. The Supreme Court stated in *Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960), that a gift in the statutory sense proceeds from a detached and disinterested generosity, out of affection, respect, admiration, charity, or like impulses, and that the most critical consideration is the transferor's intention. The record clearly indicates that NASA's award was not generated by a detached and

---

little significance to the fact that NASA withheld income tax from the award. Cf. *Meehan v. Commissioner*, 66 T.C. 794, 804 (1976); *Bhalla v. Commissioner*, 35 T.C. 13, 17 (1960).

[10]Petitioners' brief states:

"It is a matter of stipulated fact that career achievements that cause [sic] the board to decide upon $15,000.00 rather than $2,000.00 were all conceived and published by the petitioner years before the existence of NASA * * * was even conceived."

This fact has not been stipulated. In fact, the record indicates that petitioner made significant contributions to aeronautics *while he was employed by NASA*. The "Collected Works of Robert T. Jones" includes papers on aeronautics dated during his employment by NASA. See p. 1013 *supra*.

[11]Sec. 102(a) provides:

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

disinterested generosity, or by any similar impulse, but rather in recognition of petitioner's employment-connected achievements.[12] See *Denniston v. Commissioner*, 41 T.C. 667, 674 (1964), affd. per curiam 343 F.2d 312 (D.C. Cir. 1965).

*Decision will be entered for the respondent.*

---

[12]Contrary to petitioner's assertions, conclusory statements by two NASA employees, who were not members of the NASA Inventions and Contributions Board, that the award was intended to be honorific rather than compensatory are insufficient to satisfy the burden of proof. We note that no member of the Board testified.